UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
                               :

CLARK CONSULTING, INC.,          :
a Delaware Corporation,           :

                               :

              **Plaintiff and**   :
              **Counter-Defendant,** :
    - against -             :

                               :

**FINANCIAL SOLUTIONS PARTNERS,** :
**LLC, a Connecticut Limited Liability** :
**Company, and JERRY REEN, JR., an** :
**individual,**                    :

                               :

              **Defendants and**   :
              **Counter-Plaintiffs.** :
-------------------------------------------------------X



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 11/17/05

## OPINION AND ORDER

## 05 Civ. 06296 (SAS)

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I. INTRODUCTION

Clark Consulting, Inc. ("Clark") is suing Financial Solutions Partners

LLC ("FSP") and Jerry Reen, Jr. (collectively "FSP defendants") for compensatory

and punitive damages resulting from their alleged false representations and unfair

competition and for an injunction barring defendants from engaging in such conduct

in the future.[1] The FSP defendants have now asserted the following counterclaims

---

[1] This case was transferred from the United States District Court
Northern District of Illinois and assigned to this Court on July 11, 2005 pursuant
to an order entered by the Honorable Rebecca R. Pallmeyer on June 9, 2005
granting defendants' motion to transfer due to improper venue.

1

against Clark: (1) violation of section 43(a) of the Lanham Act ("Counterclaim I");

(2) violation of section 349 of the New York General Business Law ("GBL")

("Counterclaim II"); (3) unfair competition by disparagement ("Counterclaim III");

and (4) slander ("Counterclaim IV").[2]  Clark moves to dismiss all Counterclaims

pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be

granted. For the following reasons, Clark's motion is denied.

## II.    BACKGROUND

The following facts, drawn from the Counterclaim, are assumed true

for purposes of this motion. FSP was founded in 2003 by Jerry Reen, James

Corbin, and George Fehlhaber in order to market and sell separate account Bank

Owned Life Insurance ("BOLI") products to banks through private placement.[3]

With BOLI products, "banks purchase life insurance policies on the lives of [their]

executives."[4]  BOLI products are generally marketed in two forms, known as

---

[2]    *See* Answer and Counterclaims of Financial Solutions Partners, LLC
and Jerry Reen, Jr. ("Counterclaim"), Ex. 2 to Declaration of Robert S. Landy,
Counsel for FSP defendants, in Opposition to Plaintiff's Motion to Dismiss
Defendants' Counterclaims ("Landy Decl.").

[3]    *See id.* ¶¶ 66, 74.

[4]    Amended Complaint, *Clark Consulting, Inc. v. Financial Solutions
Partners, LLC and Jerry Reen, Jr.*, No. 04 Civ. 7657 (N. D. Ill.) ("Am. Compl.") ¶
13, Ex. 1 to Landy Decl.; Counterclaim ¶ 13

2

"general account" and "separate account" BOLI.[5] General account BOLI products are BOLI products that are backed by the general credit of the underlying insurer.[6] Separate account BOLI products are "[BOLI] products in which the issuing insurance company holds segregated portfolios of securities managed by an independent asset manager."[7] Clark markets and sells both types of BOLI products.[8]

Clark was founded more than thirty-five years ago and dominates the BOLI industry with about seventy percent or more of the BOLI market share in the United States.[9] FSP only recently entered the industry.[10] The separate account BOLI products sold by FSP purportedly provide higher returns and offer fully disclosed costs that are often lower than typical general account BOLI products, including Clark's.[11]

[5]   *See* Am. Compl. ¶ 15; Counterclaim ¶ 14

[6]   *See* Am. Compl. ¶ 15; Counterclaim ¶ 15

[7]   Am. Compl. ¶ 16; Counterclaim ¶ 16

[8]   *See* Counterclaim ¶ 70.

[9]   *See id.* ¶¶ 68, 70.

[10]   *See id.* ¶ 68.

[11]   *See id.* ¶ 76.

The FSP defendants allege that Clark misled Clark's customers by failing to disclose various facts relevant to buyers, including its method for determining returns as well as its arrangements and relationships with insurance carriers.[12] Clark also allegedly disparaged the separate account BOLI products FSP offers, disparaged FSP's and Reen's business practices, and represented to FSP's customers that FSP's marketing materials are deceptive and misleading.[13]

## III. LEGAL STANDARD

### A. Rule 12(b)(6)

A motion to dismiss pursuant to Rule 12(b)(6) should be granted only if "'it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief.'"[14] At the motion to dismiss stage, the issue "'is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleading that a recovery is very remote and unlikely but that is

---

[12]   *See id.* ¶¶ 80, 82.

[13]   *See id.* ¶ 87.

[14]   *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

4

not the test.'"[15]

The task of the court in ruling on a Rule 12(b)(6) motion is "'merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'"[16] When deciding a motion to dismiss, courts must accept all factual allegations in the complaint as true, and draw all reasonable inferences in plaintiff's favor.[17] Although the plaintiff's allegations are taken as true, the claim may still fail as a matter of law if it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim which would entitle it to relief, or if the claim is not legally feasible.[18] Accordingly, a claim can only be dismissed if "'no relief could be granted under

---

[15] *Phelps v. Kapnolas*, 308 F.3d 180, 184-85 (2d Cir. 2002) (quoting *Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir. 1998)). *Accord In re Initial Pub. Offering Sec. Litig.*, 241 F. Supp. 2d 281, 322-24 (S.D.N.Y. 2003).

[16] *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 176 (2d Cir. 2004) (quoting *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980)).

[17] *See Ontario Pub. Serv. Employees Union Pension Trust Fund v. Nortel Networks Corp.*, 369 F.3d 27, 31 (2d Cir. 2004) (citation omitted).

[18] *See Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, L.L.P.*, 322 F.3d 147, 158 (2d Cir. 2003); *Stamelman v. Fleishman-Hillard, Inc.*, No. 02 Civ. 8318, 2003 WL 21782645, at *2 (S.D.N.Y. Jul. 31, 2003).

any set of facts that could be proved consistent with the allegations.'"[19]

## B. Rule 8(a)

Rule 8(a) of the Federal Rules of Civil Procedure requires that the plaintiff must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(a) does not require "a plaintiff to plead the legal theory, facts, or elements underlying his claim."[20] "To comply with Rule 8, plaintiffs need not provide anything more than sufficient notice to permit defendant to file an answer."[21] The only requirement is that a complaint allege the "bare minimum facts necessary to put the defendant on notice of the claim so that [it] can file an answer."[22] Fair notice is "'that which will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify

---

[19]    *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) (quoting *Hishon v. King & Spaulding*, 467 U.S. 69, 73 (1984)) (Petitioner's allegation, which included a list of events leading to his termination, provided relevant dates, and included the ages and nationalities of at least some of the relevant persons involved with his termination, gave respondent fair notice of petitioner's claims under Title VII and the Americans with Disabilities Act and the grounds upon which they rested.).

[20]    *Phillips v. Girdich,* 408 F.3d 124, 130 (2d Cir. 2005) (citations omitted).

[21]    *In re Initial Public Offering Sec. Litig.,* 241 F. Supp. 2d at 323 (citations omitted).

[22]    *Higgs v. Carver,* 286 F.3d 437, 439 (7th Cir. 2002).

6

the nature of the case so that it may be assigned the proper form of trial.'"[23] Thus a complaint "[may] not be dismissed on the ground that it is conclusory or fails to allege facts."[24] This notice pleading standard "relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims."[25]

## C.    *Noerr-Pennington* Doctrine

"The *Noerr-Pennington* doctrine was first established in the context of concerted petitions for anti-competitive legislation."[26] The Supreme Court has extended the doctrine to apply to concerted actions before courts and administrative agencies.[27] The *Noerr-Pennington* doctrine protects litigation or

[23]     *Wynder v. McMahon*, 360 F.3d 73, 79 (2d Cir. 2004) (quoting *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995)).

[24]     *In re Initial Public Offering Sec. Litig.*, 241 F. Supp. 2d at 323.

[25]     *Swierkiewicz*, 534 U.S. at 514. *Accord Conley*, 355 U.S. at 48 ("The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits.").

[26]     *Primetime 24 Joint Venture v. National Broad. Co.*, 219 F.3d 92, 99 (2d Cir. 2000). The *Noerr-Pennington* doctrine and the exceptions to it grew from two Supreme Court cases: *Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961) and *United Mine Workers of Am. v. Pennington*, 381 U.S. 657 (1965).

[27]     *See California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510-11 (1972).

lobbying by private individuals seeking to influence governmental anticompetitive action under the First Amendment.[28] Such activities are immunized from antitrust liability.[29] "The guiding principle behind the *Noerr-Pennington* immunity is to insure 'uninhibited access to government policy makers.'"[30]

The *Noerr-Pennington* doctrine has been applied only to situations where direct action is taken to influence governmental decisionmaking. But, *Noerr-Pennington* immunity does not extend to "actions occurring in an essentially private context.'"[31] Courts have extended the *Noerr-Pennington* doctrine in a limited manner, however, "to encompass concerted efforts incident to

---

[28]  *Professional Real Estate Investors v. Columbia Pictures Indus.*, 508 U.S. 49, 56 (1993).

[29]  *See id; T.F.T.F. Capital Corp. v. Marcus Dairy, Inc.*, 312 F.3d 90, 93 (2d Cir. 2002) ("The *Noerr-Pennington* doctrine generally immunizes a party's commencement of a prior proceeding."). *See also California Motor Transp. Co.*, 404 U.S. at 510 ("[I]t would be destructive of rights of association . . . petition to hold that groups with common interests may not, without violating the antitrust laws, use the channels and procedures of state and federal agencies and courts to advocate their causes and points of view respecting resolution of their business and economic interests vis-a-vis their competitors.").

[30]  *Mid-Texas Commc'ns Sys., Inc. v. American Tel. & Tel. Co.*, 615 F.2d 1372, 1382 (5th Cir. 1980) (quoting *George R. Whitten, Jr., Inc. v. Paddock Pool Builders, Inc.*, 424 F.2d 25, 32 (1st Cir. 1970)).

[31]  *Agritronics Corp. v. National Dairy Herd Assoc.*, 914 F. Supp. 814, 823 (N.D.N.Y. 1996) (quoting *Mid-Texas Commc'ns Sys.*, 615 F.2d at 1382-83) (holding that the *Noerr-Pennington* doctrine is inapplicable to litigation that involved an alleged exclusionary policy that did not involve lobbying efforts).

8

litigation, such as prelitigation 'threat letters,' and 'settlement offers.'"[32]

Some courts have also extended the *Noerr-Pennington* doctrine so

that it shields parties from state tort law liability as well as antitrust liability when

they petition the government for action favorable to them. For example, the

doctrine has been held to shield defendants from liability for tortious interference

with business when supporting boycotts or lobbying to influence the

government.[33] However, courts have not extended the *Noerr-Pennington* doctrine

so far as to shield defendants from liability for defamation.[34]

## D.    Section 43(a) of the Lanham Act

part:
Section 43(a) of the Lanham Trademark Act provides, in relevant

> Any person who . . . uses in commerce any . . . false or misleading
> description of fact, or false or misleading representation of fact,
> which . . . in commercial advertising or promotion, misrepresents

---

[32]    *Primetime 24 Joint Venture*, 219 F.3d at 100 (citations omitted).
*Accord McGuire Oil Co. v. Mapco, Inc.*, 958 F.2d 1552, 1560 (11th Cir. 1992)
(threats of litigation with anticompetitive intent are not subject to Sherman Act).

[33]    *See In re IBP Confidential Bus. Documents Litig.*, 755 F.2d 1300,
1312 (8th Cir. 1985) (collecting cases).

[34]    *See Metropolitan Opera Ass'n, Inc. v. Local 100, Hotel Employees
and Rest. Employees Int'l Union*, No. 00 Civ. 3613, 2004 WL 1943099, at *20
(S.D.N.Y. Aug. 27, 2004) ("*Noerr-Pennington* doctrine does not necessarily and
absolutely preclude liability for damages resulting from defamatory statements
made in the course of petitioning the government") (citations omitted).

9

the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he is or is likely to be damaged by such act.[35]

In order to establish a violation of section 43(a), a plaintiff must show that the defendant: (1) made "false or misleading factual representations regarding the nature, characteristics, or qualities" of defendant's or plaintiff's goods or services; (2) "used the false or misleading misrepresentations 'in commerce'"; (3) made the misrepresentations "in the context of commercial advertising or commercial promotion"; and (4) made plaintiff believe that it is likely to be damaged by the misrepresentations.[36] In order for the challenged conduct to constitute commercial advertising or promotion under the third factor, defendant must have disparaged a service or product in order to promote its own service or product.[37] The Act imposes no affirmative duty of disclosure, however, and a

---

[35]    15 U.S.C. § 1125(a)(1)(B).

[36]    *Towers Fin. Corp. v. Dun & Bradstreet, Inc.*, 803 F. Supp. 820, 823 (S.D.N.Y. 1992) (citing *McNeil- P.C.C., Inc. v. Bristol Myers Squibb Co.*, 938 F.2d 1544, 1548-49 (2d Cir. 1991)). *Accord World Wrestling Fed'n Entm't, Inc. v. Bozell*, 142 F. Supp. 2d 514, 530 (S.D.N.Y. 2001); *Randa Corp. v. Mulberry Thai Silk, Inc.*, No. 00 Civ. 4061, 2000 WL 1741680, at *2 (S.D.N.Y. Nov. 27, 2000).

[37]    *See World Wrestling*, 142 F. Supp. 2d at 530. *See also Sodexho USA, Inc. v. Hotel & Rest. Employees & Bartenders Union*, 989 F. Supp. 169, 172 (D. Conn. 1997).

10

claim cannot be based on the failure to disclose a fact.[38]

"In order to establish standing to sue under the Lanham Act, a plaintiff must demonstrate a 'reasonable interest to be protected' against the advertiser's false or misleading claims, and a 'reasonable basis' for believing that [this] interest is likely to be damaged by the false and misleading advertising."[39] The latter "reasonable basis" prong requires that the plaintiff demonstrate both "likely injury and a causal nexus to the false advertising."[40] "This circuit has adopted a flexible approach toward the showing a Lanham Act plaintiff must make on the injury and causation component of its claim."[41] However, the likelihood of the injury and causation must be demonstrated; they will not be presumed by a

---

[38]     *See Agency Dev., Inc. v. Med Am. Ins. Co.*, 310 F. Supp. 2d 538, 547 (W.D.N.Y. 2004) (Lanham Act "imposes no affirmative duty of disclosure"); *Avon Prods., Inc. v. S.C. Johnson & Son, Inc.*, 984 F. Supp. 768, 798 (S.D.N.Y. 1997); *International Paint Co. v. Grow Group, Inc.*, 648 F. Supp. 729, 730 (S.D.N.Y. 1986); *McNeilab, Inc. v. American Home Prods. Corp.*, 501 F. Supp. 517, 532 (S.D.N.Y. 1980) ("A failure to inform consumers of something, even something that they should know, is not a per se misrepresentation actionable under section 43(a) of the Lanham Act.").

[39]     *Ortho Pharm. Corp. v. Cosprophar, Inc.*, 32 F.3d 690, 694 (2d Cir. 1994) (quoting *Coca-Cola Co. v. Tropicana Prods., Inc.*, 690 F.2d 312, 316 (2d Cir. 1982)).

[40]     *Id.*

[41]     *Id.*

11

showing that the parties are competitors and the advertisements are false.[42]  A

more substantial showing is required where the plaintiff's products are not in

direct competition with the defendant's products.[43]

## E.    Section 349 of the GBL

Section 349 of the GBL makes unlawful "[d]eceptive acts or practices

in the conduct of any business, trade or commerce or in the furnishing of any

service in [New York]."[44]  "In order to state a claim under section 349, plaintiffs

must allege that: 1) defendants engaged in conduct that is deceptive and

misleading in a material way; 2) the deceptive conduct was 'consumer oriented,'

and 3) plaintiffs have been injured 'by reason of' defendants' conduct."[45]

"Whether a representation or an omission, the deceptive practice must be 'likely to

mislead a reasonable consumer acting reasonably under the circumstances.'"[46]

---

[42]    *See Johnson & Johnson v. Carter-Wallace, Inc.*, 631 F.2d 186, 190
(2d Cir. 1980).

[43]    *See Ortho Pharm. Corp.*, 32 F.3d at 694.

[44]    N.Y. Gen. Bus. L. § 349(a) (McKinney 2005).

[45]    *Capitol Records, Inc. v. Wings Digital Corp.*, 218 F. Supp. 2d 280,
285-286 (E.D.N.Y. 2002) (quoting *In re Methyl Tertiary Butyl Ether ("MTBE")
Prods. Liab. Litig.*, 175 F. Supp. 2d 593, 630 (S.D.N.Y. 2001)).

[46]    *Stutman v. Chemical Bank*, 95 N.Y.2d 24, 29 (2000) (quoting *Oswego
Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20,
25 (1995)).

12

"Consumer oriented" conduct refers to "conduct that has a broad impact on consumers at large."[47] To satisfy the "by reason of" requirement, a plaintiff is only required to allege that defendant's deceptive acts caused the injury.[48] "[C]orporate competitors . . . have standing to bring a claim under this [statute] . . . so long as some harm to the public at large is at issue."[49]

## F.    Unfair Competition by Disparagement

Disparagement is defined as a "matter which is intended by its publisher to be understood or which is reasonably understood to cast doubt upon the existence or the extent of another's property . . . or upon their quality."[50] A general claim of superiority of one's product over that of a competitor is not actionable.[51] Where a plaintiff asserts disparagement of goods as the basis for an unfair competition claim, the pleading must allege both malice and special

[47]    *In re MTBE Prods. Liab. Litig.*, 175 F. Supp. 2d at 630.

[48]    *Id.* at 631.  *Accord Stutman*, 95 N.Y.2d 24 at 29; *Oswego*, 85 N.Y.2d at 26.

[49]    *Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 264 (2d Cir. 1995) (citations omitted).

[50]    *Brignoli v. Balch Hardy & Scheinman, Inc.*, 645 F. Supp. 1201, 1208 (S.D.N.Y. 1986) (citing Restatement (Second) of Torts § 629 (1977)).

[51]    *See id.*

damages.[52] "'[O]nly if the false disparagement *directly* maligns the character of the *owner* of the goods is it actionable *per se*'" and special damages need not be asserted.[53]

## G. Slander

In order to state a claim for slander, a plaintiff must allege facts that provide an adequate identification of the allegedly slanderous statements, the maker of the purported statements, when they were made, and to whom they were communicated.[54] The Complaint need not contain the exact words that constitute slander.[55] Rather, the liberal pleading standard is "satisfied by an adequate

---

[52]     *See Ruder & Finn v. Seaboard Surety*, 52 N.Y.2d 663, 671 (1981). "Special damages are limited to losses having pecuniary or economic value and must be fully and accurately stated, with sufficient particularity to identify actual losses." *Kirby v. Wildenstein*, 784 F. Supp. 1112, 1116 (S.D.N.Y. 1992) (quotations and citations omitted). They must be the "natural and immediate consequence of the disparaging statements." *Id.* When the special damages constitute a loss of customers, the persons who cease to be customers or who refused to purchase must be named and the damages must be itemized, not approximated. *See id.* at 1118.

[53]     *Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 277 F. Supp. 2d 269, 277 (S.D.N.Y. 2003) (quoting *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, No. 91 Civ. 4544, 1992 WL 170559, at *4 (S.D.N.Y. Jul. 2, 1992)).

[54]     *See Mahmud v. Bon Secours Charity Health Sys.*, 289 F. Supp. 2d 466, 476 (S.D.N.Y. 2003).

[55]     *See Albin v. Cosmetics Plus N.Y.*, No. 97 Civ. 2670, 1997 WL 615494, at *3 (S.D.N.Y. Oct. 6, 1997).

14

identification of the purported [slanderous] communication."[56]

## IV. DISCUSSION

### A. Timeliness

The FSP defendants allege that Clark's motion to dismiss is untimely because it was made more than three months after service of the Counterclaim. The Federal Rules of Civil Procedure require that a plaintiff serve a reply to a counterclaim twenty days after the answer is served. However, before this case was transferred to this Court, the District Court of the Northern District of Illinois issued an order providing that the date for response to the Counterclaim be adjourned *sine die*. As this Court did not vacate that order, Clark's motion to dismiss the Counterclaims is timely.

### B. *Noerr-Pennington* Doctrine

Clark asserts that its statements to third parties concerning this litigation are immunized under the *Noerr-Pennington* doctrine.[57] As such, Clark maintains that the FSP defendants cannot contend that these statements are actionable and that the entire FSP Counterclaim must be dismissed.[58] The FSP

---

[56]   *Id.*

[57]   *See* Motion to Dismiss at 5-7.

[58]   *See id.* at 5, 8.

15

defendants respond that their Counterclaims are not founded solely on Clark's filing of this action, and that the doctrine is inapplicable in the context of private commercial activity.[59]

The *Noerr-Pennington* doctrine is inapplicable here because the litigation does not involve concerted activity to influence governmental anticompetitive action. The lawsuit does not fall within the anticompetitive context to which the doctrine applies. Rather, the lawsuit is based on deceptive trade practices and unfair competition. Furthermore, the FSP defendants' counterclaims are not solely based upon Clark's statements in its Complaint. Rather, the FSP defendants allege that Clark made misleading and deceptive representations and omissions in commercial discussions with customers and potential customers apart from the allegations in the Complaint. The doctrine does not provide a basis for dismissing the Counterclaim.

## C.    Counterclaim I: Section 43(a) of the Lanham Act

The FSP defendants allege that Clark violated section 43(a) of the Lanham Act by disseminating false, misleading, and deceptive representations and omissions regarding the FSP defendants' separate account BOLI products, the FSP

---

[59]    *See* Defendants' Memorandum in Opposition to Plaintiff's Motion to Dismiss the Counterclaims at 10.

defendants' marketing of their products, and Clark's general account BOLI products, which resulted in damages and irreparable harm to the FSP defendants.[60] Clark argues for dismissal claiming that the FSP defendants allege omissions that are not actionable under the Lanham Act, and that the FSP defendants lack standing to sue under the Act.[61]

The FSP defendants contend that Clark failed to disclose to Clark's customers relevant information regarding Clark's BOLI products. These omissions are not actionable under the Lanham Act because the Act imposes no affirmative duty of disclosure.[62] However, the FSP defendants also repeatedly assert that Clark made affirmative misleading representations concerning the FSP defendants' separate account BOLI products, the FSP defendants' marketing of FSP's products, and Clark's general account BOLI products.[63] The FSP defendants assert that Clark made these misrepresentations to customers and

---

[60]    *See* Counterclaim ¶¶ 91-97.

[61]    *See* Clark Consulting, Inc.'s Reply Memorandum in Support of Its Motion to Dismiss Defendants' Counterclaim ("Reply Mem.") at 5.

[62]    *See Agency Dev., Inc.*, 310 F. Supp. 2d at 547. *See also Avon Prods., Inc.*, 984 F. Supp. at 798; *International Paint Co.*, 648 F. Supp. at 730.

[63]    *See* Counterclaim ¶¶ 91-93.

-17-

potential customers to impede FSP's ability to compete with Clark.[64] The alleged

representations were therefore made in the context of commercial advertising or

promotion. Rule 8 simply requires a short plain statement of the facts giving rise

to the asserted claim. The pleading meets this requirement.

Moreover, the FSP defendants have standing to sue under the Act.

The FSP defendants have a protectable interest in the sale of their separate account

BOLI products. In addition, they are in direct competition with Clark, and have

sufficiently alleged that Clark's misrepresentations will likely result in damages

and irreparable harm. Accordingly, the motion to dismiss Counterclaim I is

denied.

## D.   Counterclaim II: Section 349 of the GBL – Deceptive Trade Practices

The FSP defendants allege that Clark violated section 349 of the GBL

by disseminating false, misleading and deceptive representations and omissions

regarding the FSP defendants' separate account BOLI products, the FSP

defendants' marketing of their products, and Clark's general account BOLI

products. The FSP defendants contend that these representations and omissions

resulted in harm to consumers of BOLI products and to the public at large, as well

---

[64]      *See id.* ¶ 89.

as damages and irreparable harm to the FSP defendants.[65] Clark moves to dismiss on the grounds that the FSP defendants have failed to demonstrate injury and cannot show direct harm to consumers.[66]

The FSP defendants have sufficiently alleged that Clark intentionally and wilfully deceived consumers of BOLI products and the general public by disseminating false, misleading, and deceptive representations and omissions concerning the FSP defendants' separate account BOLI products, the FSP defendants' marketing of their products, and Clark's general account BOLI products, in, among other places, New York State. The FSP defendants also allege that the representations and omissions have a broad impact on consumers at large. Therefore, their allegations are sufficiently "consumer-oriented."[67] The FSP defendants need only allege that Clark's deceptive act injured them in order to satisfy the "by reason of" requirement. The FSP defendants' allegation that they have suffered damages as a proximate result of Clark's deceptive misrepresentations and omissions is sufficient. The motion to dismiss Counterclaim II is denied.

---

[65]    *See id.* ¶¶ 99-104.

[66]    *See* Reply Mem. at 8-9.

[67]    *Oswego*, 85 N.Y.2d at 26-27.

-19-

### E.    Counterclaim III: Unfair Competition By Disparagement

The FSP defendants contend that Clark maliciously made representations that the FSP defendants' marketing materials were deceptive and disparaged the FSP defendants' business practices and products to customers and potential customers.[68] The FSP defendants also assert that Clark used the "malicious allegations" of the Amended Complaint to disparage FSP's products in the context of marketing presentations and in the sale of BOLI products.[69] The FSP defendants assert that they have suffered damages as a result of these actions.[70] Clark moves to dismiss arguing that the unfair competition claim is actually a product disparagement claim in which the FSP defendants failed to plead special damages.[71]

While it is true that the FSP defendants assert disparagement of goods as the basis of their unfair competition claim, where the disparagement directly maligns the character of the owner of the goods the claim does not require proof of

---

[68]    *See* Counterclaim ¶¶ 107-109.

[69]    *Id.* ¶¶ 88, 107.

[70]    *See id.* ¶ 111.

[71]    *See* Clark Consulting, Inc.'s Memorandum in Support of Its Motion to Dismiss Defendants' Counterclaim ("Motion to Dismiss") at 13-14.

special damages.[72] Accepting all of the FSP defendants' allegations as true, the alleged product disparagement directly impeaches the integrity of the FSP defendants. The FSP defendants contend that Clark made deceptive representations with regard to the FSP defendants' marketing materials, and disparaged their products and business practices.[73] The alleged representations were therefore specifically directed at the FSP defendants' products. As a result, because the FSP defendants allege that Clark's disparagement directly maligned their character, the FSP defendants need not allege special damages. They sufficiently plead that they suffered actual damages as a result of Clark's conduct. Therefore, the motion to dismiss Counterclaim III is denied.

## F.    Counterclaim IV: Slander

The FSP defendants allege that Clark maliciously, falsely, and misleadingly represented that the FSP defendants' marketing materials are deceptive and disparaged the FSP defendants' business practices and products to BOLI customers and potential customers.[74] The FSP defendants contend that

---

[72]    *See Fashion Boutique*, 1992 WL 170559, at *4.

[73]    *See* Counterclaim ¶ 107.

[74]    *See id.* ¶ 113.

-21-

these acts caused them to suffer damages.[75]  Clark asserts that the FSP defendants have not pled a slander claim with sufficient specificity, and therefore do not provide Clark with adequate notice of the claim.[76]

The FSP defendants have sufficiently alleged their slander Counterclaim.  FSP defendants allege that Clark made the slanderous statements to BOLI consumers, which is sufficient to identify who made the allegedly slanderous statements and to whom they were communicated.  The FSP defendants do not identify the exact words used, but they sufficiently identify the purported communication by alleging that Clark made false and misleading representations about FSP's marketing materials, and disparaged FSP's and Reen's business practices and separate account BOLI products.  Lastly, FSP defendants contend that Clark's false representations have been and continue to be disseminated, which sufficiently identifies when the allegedly slanderous statements were made.  Accordingly, the motion to dismiss Counterclaim IV is denied.

## V.  CONCLUSION

For the foregoing reasons, Clark's motion to dismiss the

---

[75]  *See id.* ¶ 118.

[76]  *See* Motion to Dismiss at 15-16.

Counterclaims is denied. The Clerk of the Court is directed to close this motion

[Docket #2]. A conference is scheduled for December 7, 2005 at 5:00 p.m. in

Courtroom 15C.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:     New York, New York
           November 17, 2005

## - Appearances -

**For Clark Consulting, Inc.:**

Daniel S. Hollman, Esq.
Julia E. Judish, Esq.
VEDDER, PRICE, KAUFMAN & KAMMHOLZ
805 Third Avenue, Suite 2300
New York, NY 10022
(212) 407-7700

Stanley B. Block, Esq.
Thomas R. Dee, Esq.
Cindy S. Stuyvesant, Esq.
222 North LaSalle Street, Suite 2600
Chicago, IL 60601-1003
(312) 609-7500

**For Financial Solution Partners, LLC and Jerry Reen, Jr.:**

David B. Tulchin, Esq.
Maite Aquino, Esq.
Robert S. Landy, Esq.
SULLIVAN & CROMWELL
125 Broad Street
New York, NY 10004
(212) 558-4000